# Louisville & Nashville Railroad Co. *v.* Higginbotham, *et al.*

## *Trespass and Case.*

### (Decided Nov. 14, 1907.  44 So. Rep. 872.)

1. *Action; Joinder; Trespass and Case.*—Under section 3293, Code 1896, a count in trespass which alleges plaintiff's possession of certain real estate on which were certain springs of water; that from the springs the railroads pumped a great deal of water, and as a result one or more of the springs were filled up and plaintiffs deprived of the use of the water, and a count in case alleging that defendants caused a part of the water to be pumped from the land and were so negligent in and about the pumping that a part of the springs were filled, and plaintiffs deprived of the use of the water, may be joined, as they relate to the same subject matter.

2. *Trespass; Complaint; Sufficiency.*—A complaint alleging plaintiff's possession of certain real estate on which were certain springs of water, that the defendant railroad pumped a great part of the water and as a consequence, one or more of the springs were filled and plaintiffs deprived of the use of the water, is not subject to demurrer on the ground that it did not set out a cause of action in trespass, and did not show that the acts done were done wrongfully or without plaintiff's consent.

3. *Negligence; Complaints Sufficiency of Allegation of Negligence.*—A count alleging plaintiffs' possession of certain real estate on which were certain springs of water, the pumping by defendant railway of part of the water from the land, and that in or about the pumping defendant's servants so negligently conducted themselves that the springs, or a part of them, were filled and plaintiffs deprived of the use of the water, is not subject to demurrer on the ground that it does not show in what the negligence of defendant's servants consisted.

[Louisville & Nashville Railroad Co. v. Higginbotham, et al.]

4. *Trespass; Action; Title to Support.*—Possession will support an action of trespass without proof of title.

5. *Same.*—The fact that land may have been dedicated to the pub- lic as a park does not make it impossible to acquire such possession thereof as will support trespass.

6. *Nuisance; Public Nuisance; Recovery for Special Injury.*—One· who sustains injury may recover for the same although the nuisance· was public, if it results in special injury.

7. *Trespass; Elements of.*—The gist of trespass is the interference· with or disturbance of possession.

8. *Same; Damages; Continuing Trespass.*—Where the trespass is a continuing one—not of the class of permanent appropriations to be assessed at once for all time—there may be successive actions for each continuing trespass.

9. *Same.*—A trespass arising from the pumping of water from a spring and the filling, or partial filling, of one or more of them, is committed at each pumping and filling, especially after the one in possession protests against it.

10. *Waters and Water Courses; Grant of Right to Protect Water; Construction.*—A deed granting the right to the use of water out of one of the springs near defendant's right of way and to lay a pipe to connect the spring with the water tank, does not authorize the taking of water from all of the springs, and the placing of obstruc- tions which cause them to fill.

11. *Evidence; Parol to Explain Writing.*—The deed granted the right to use water out of one of the springs near the right of way and to lay a pipe to connect the spring with defendant's water tank. At a subsequent time the grantor in a conversation pointed out the spring from which he desired the water to be pumped and consented that the water be pumped temporarily from another point until the designated spring could be walled up and made available. Held, not a modification of the original deed nor a construction of the deed, as the deed was clearly expressed and needed no construction.

12. *Trespass; Elements of Offense.*—The railroad was a trespasser if it failed for a reasonable time to wall up the spring designated and continued to pump from the point temporarily granted, although it claimed under a deed designating a certain spring from which the water could be pumped and to which a pipe could be laid, and in a subsequent conversation the grantor in the deed agreed that water might be pumped temporarily from another point until the designated spring could be walled up and made available.

13. *Adverse Possession; Hostile Character of Possession.*—Where the possession is permissive and without any claim of right, it can- not ripen into a title by a lapse of time.

14. *Trial: Instructions; Invasion of Province of Jury.*—It was prop- er to refuse to instruct the jury that they must find that the land had been dedicated and was a public park during the time of the trespass complained of, where, whether the land had been dedicated as a park, and if so, whether it had been vacated, were, under the evidence, a question for the jury.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by A. L. and P. W. Higginbotham against Louisville & Nashville Railroad Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Action for damages for diverting water by pumping and for the obstruction of the stream, causing a filling of the spring. The complaint as amended is as follows: "Count 1: Plaintiffs claim of the defendant $1,999 as damages, for that heretofore, towit, during the whole of the six years immediately preceding the filing of this suit, plaintiffs were in possession of certain real estate in Jefferson county, Ala., described as follows: [Here follows the description.] Plaintiffs aver that upon said land there were during the said time certain springs of water, and during a great part of said time defendant habitually caused to be taken or pumped from said land a great part of the water of said springs, and maintained upon said lands certain piping and a box or reservoir by means of which defendant took water from said land; and as a proximate consequence of the taking of said water as aforesaid, one or more of said springs were filled or partially filled, and the flow of water therefrom was obstructed, and said springs were rendered less beautiful and attractive, and plaintiffs were deprived of the use of said water for themselves and their families and their live stock, and for the various and sundry uses to which said water should be put, and the value of the use of said land during said time was greatly lessened, and plaintiffs were put to great inconvenience, trouble, and expense in or about their efforts to have defendant cease or stop pumping said water and cease filling or causing said springs to be filled, and in and about removing the obstructions from said land, and said land was greatly disfigured and obstructed. Plaintiffs allege that

defendant's servants or agents, acting within the line and scope of their authority as such, wrongfully took or pumped said water as aforesaid." Count 2 is the same as count 1 as to description of the land and time of possession of plaintiffs, and as to the existence of springs, and adds that defendant during said time caused a part of said water flowing from said spring to be taken or pumped from said land, and in or about taking or pumping said water defendant's servants or agents so negligently conducted themselves that said springs or a part thereof were filled up, and said land was obstructed, and plaintiffs suffered the injuries and damages set out in the first count. The following demurrers were interposed: First, to the complaint as a whole because there is a misjoinder of counts—the first count being trespass, and the second count being trespass on the case, and the two counts not relating to the same subject-matter; to count 1 because it does not set out a cause of action in trespass, and because it does not show that the acts done were done wrongfully or without the consent of the plaintiffs, and to the second count because it does not show in what the negligence of defendant's servants consisted; and the following additional grounds of demurrer to the complaint as a whole: "The land is not sufficiently described. The owners of the remaining undivided three-fourths interest in said land are not made parties. The suit is for injury only to an undivided interest, and not to the entire interest."

The evidence tended to show that the father of the plaintiffs devised to plaintiffs all the interest he owned in the land described in the complaint at the time of his death; that there were eight or nine springs of water on a part of the lands described, which were bold, free, running springs of clear water; that the father of plaintiffs

22 R

and his wife executed to defendant a proper deed conveying a right of way through the lands, and also granted to defendant the right to use the water out of one of the springs near the right of way, and to lay a pipe through the lands, to be covered with earth, to connect the spring with a water tank; that after the pipe line had been laid and the box sunk plaintiff's father pointed out to defendant one of the springs from which he desired the water to be pumped, and where the water from but one spring would be pumped, and consented that the box be placed in the spring branch, where it was placed, and that the water be pumped from this point temporarily until the designated spring could be walled up and made available; that afterwards, when the box was renewed, it was agreed that it might be placed in the branch at the same point, provided a floodgate was made in the box, to be left open when no pumping was going on or when it was raining; but when this second box was renewed it was put in with heavier timbers, and without floodgates, and against the consent of the plaintiffs, and as a result the water backed up over the spring and caused sand and other debris to settle in the spring and render the springs unfit for use, etc. There was evidence tending to show that the lands on which the springs were located had been surveyed and plotted, and lots sold therefrom, and that the particular piece of land on which the springs were was marked on the map "Spring Park," and the map was so recorded. Evidence also tended to show that the railroad had been using the water as indicated in the testimony for the plaintiffs since 1888, and that part of this time, and up to the time the suit was brought, the railroad had furnished plaintiffs water for domestic purposes by means of a pipe line from the railroad tank to the plaintiffs' residence. The other facts sufficiently appear in the opinion of the court.

[Louisville & Nashville Railroad Co. v. Higginbotham, et al.]

Charge 7, referred to in the opinion, was as follows: "(7) The jury must find from the evidence that the land on which the springs are located was a dedicated public park during the time of the grievances complained of in the complaint."

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. The charge given for plaintiff was error since possession is prima facie evidence of ownership.—28 A. & E. Ency. of Law, 238; 13 Ib. 750; *Ray. v. Taylor,* 56 Ala. 188. It was competent for defendant to show that the lands in controversy were of a nature that did not admit of private ownership, and that for that reason plaintiff's possession of them, would not be possession in the sense that the title would be referred to it by a mere occupancy as distinguished from legal possession.—*Reed v. M. & A. of Birmingham,* 92 Ala. 339. The court erred in refusing the general charge requested by the defendant as to the complaint as a whole and to each count thereof separately.—*Bir. Min. R. R. Co. v. City of Bessemer,* 98 Ala. 274; *Demopolis v. Webb,* 87 Ala. 659. The designation "Spring Park" was sufficient to evince the intention of the dedicator to devote the lands to public use.—*Avondale L. Co. v. Avondale,* 111 Ala. 523; 9th A. & E. Ency. of Law, p. 25 and note 1, page 26; Ency. of Law & Procedure, Vol. 13, p. 457, note 84; Elliott on Roads and Streets, p. 111-12-13; Dillon on Munic. Corp. (4th Ed.) secs. 644-645-6 and notes; *Archer v. Salinas City,* 28th Pac. 829; 16 L. R. A. 145; *San Leandro v. LeBreton,* 72 Cal. 170; 13th Pac. 170; 13th Pac. 405; *Pierce v. Roberts,* 57th Conn. 31; 17th Atl. 275; *Rhodes v. Brightwood,* 43 N. E. 942; 145 Ind. 21; *Price v. Plaintfield,* 40 N. J. L. 608; *Watertown v. Cowan,* 4 Paige, 510; 27 Am. Dec. 80; *Church v. Portland,* 22 Pac. 528; 6 L. R. A. 259; *Abbott v. Mills,* 23 Am. Dec. 222;

*McConnell v. Town of Lexington,* 12 Wheat. 375-6. The facts fail to show that the method of pumping adopted by the defendant was against the consent of the plaintiffs or their ancestor in such a sense as to constitute trespass.—*A. G. S. R. R. Co. v. S. & N. A. R. R. Co.,* 84 Ala. 581.

BOWMAN, HARSH & BEDDOW, for appellee. The two counts relate to the same subject matter and may be joined.—Sec. 3293, Code 1896; *City Del. Co. v. Henry,* 139 Ala. 167. The quo modo of negligence need not be pleaded, so the demurrer to the 2nd count was properly overruled.—*L. & N. R. R. Co. v. Marbury L. Co.,* 125 Ala. 237. The evidence does not show a dedication.—*Attorney General v. Lakeview Land Co.,* 143 Ala. 297; *Gage v. Railroad Co.,* 84 Ala. 224; 5 Ency. of Law, 400; 2 Dillon on Munic. Corp. sec. 636; Washburn on Easements, 209.

SIMPSON, J.—This was an action by the appellees against the appellant, claiming damages on account of the pumping of water by the defendant from certain springs on land claimed to be in the possession of the plaintiffs. The first assignment of error insisted on is to the action of the court in overruling the defendant's demurrer to the complaint for misjoinder of counts; it being claimed that the first count is in trespass, and the second in case, and that they do not relate to the same subject-matter. Under our statute trespass and case may be joined (Code 1896, § 3293), and the counts in this case relate to the same subject-matter. Consequently there was no error in overruling the demurrer on this ground.

The second assignment is to the action of the court in overruling the demurrer to the first count of the com-

plaint.   Said first count is in trespass for the wrongful act of pumping the water from the land and filling the springs (*Southern Bell Tel. Co. v. Francis,* 109 Ala. 224, 233, 238, et seq., 19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930), and the demurrer to the same was properly overruled.   The demurrer to the second count was properly overruled.—*L. & N. R. R. Co. v. Marbury Lumber Co.,* 125 Ala. 237, 28 South. 438, 50 L. R. A. 620.

The fourth assignment of error is to the giving, on the request of the plaintiff, of the following charge, towit: "Whether there was any dedication of a park or not, if the jury are reasonably satisfied, from the evidence, that plaintiff's complaint is true, then plaintiff's case is made out."   The appellant insists that this charge should not have been given, because, if the land in question had been dedicated as a park, the plaintiffs could not acquire such a possession as would entitle them to recover in this action.   It is true that, in trespass, the plaintiff must prove possession, and it is also true that he can recover on possession, without proving title.—28 Am. & Eng. Ency. Law (2d Ed.) p. 673 et seq.; *Morris v. Robinson,* 80 Ala. 291; *Lankford v. Green,* 62 Ala. 315.   In the case last cited this court said: "Possession, whether founded on a good or bad title, will support the action against a stranger or wrongdoer; or the possessions may be tortious, and a wrongdoer cannot justify or excuse an invasion of and injury to it."—62 Ala. 318.   In the earlier case, on which the above expression is based, a party in possession of government land, without authority, was held to be entitled to recover in trespass against a wrongdoer.—*Duncan v. Potts,* 5 Stew. & P. 82, 24 Am. Dec. 766.   This case was cited with approval by this court in *L. & N. R. R. Co. et al. v. Hall,* 131 Ala. 165, 32 South. 603.   See, also, 1 Addison on Torts (Wood's Ed.) p. 397, § 387.   It is also stated to be "well settled that

actual possession, though without the consent or even adverse to the real owner, will be sufficient as against a wrongdoer, or one who can show no better title."—*Miller et al. v. Kirby*, 74 Ill. 242, 245. See, also, *Evertson v. Sutton*, 5 Wend. (N. Y.) 281, 21 Am. Dec. 217. It cannot be said as a matter of law that the mere fact that the land had been dedicated to the public rendered it impossible for the plaintiff to acquire such possession as to entitle them to recover in trespass against a wrong-doer without any title. It may be said, farther ,that under the second count, which is in "case," the plaintiff could recover for special injury to himself by reason of a public nuisance.—*Crommelin v. Coxe & Co.*, 30 Ala. 318, 328, 68 Am. Dec. 120; *Ala. Sipscy Riv. N. Co. v. Ga. Pac. Ry.*, 87 Ala. 154, 157, 6 South. 73; *Whaley v. Wilson*, 112 Ala. 627, 631, 20 South. 922. The special damage to the plaintiff is alleged in his being deprived of the use of the water in the springs, for himself and family. The court did not err in giving said charge.

While the bill of exceptions states that the evidence detailed is "all the evidence bearing upon the charges hereinafter set out," yet there is added, after that statement, "It is agreed that the plaintiffs introduced evidence tending to support each allegation of the complaint, unless the facts as to the plaintiffs' occupancy and use of the lands on which the springs were located, in connection with the filing and recording of the map attached as 'Exhibit A' to the bill of exceptions by their father, prevented their having such possession of the lands on which the springs were located as would authorize the maintenance of this suit by them. This agreement does not deprive the defendant of the benefit of presenting the question as to whther its special plea of justification is proved by the evidence." The first clause admits the possession of the plaintiffs as alleged;

that during said occupancy the defendant pumped the water from the springs ,and filled or partially filled one or more of them, thus depriving the plaintiffs in possession of the use of the water and injuring the land; and that this was done without the consent and against the protests of plaintiffs. It also admits that the defendant's servants, acting within the line and scope of their authority, wrongfully took and pumped the water. The gist of the action of trespass is the disturbance of the possession.—28 Am. & Eng. Ency. Law, p. 552. A trespass may be committed by disturbing the possession of the occupant, though the party committing the trespass does not actually go on the premises, as by throwing water or missiles on the land, or removing a partition fence, though the trespasser does not place his foot on the land.—28 Am. & Eng. Ency. Law, 552, 553; *Garrett v. Sewell*, 108 Ala. 521, 526, 18 South. 737. And where the trespass is a continuing one, and not of that class of permanent appropriations, to be assessed for all time at once, there may be successive actions for each continuance of the trespass.—*Uline v. N. Y. Cent., etc., R. R.,* 101 N. Y. 98, 4 N. E. 542, 54 Am. Rep. 661; *Plate v. New York Central R. R.,* 37 N. Y. 472, 476; *Williams v. N. Y. Cent. R. R.,* 16 N. Y. 97, 111, 69 Am. Dec. 651; *Carpenter v. Oswego, etc., R. R.,* 24 N. Y. 661, 665; *Silsby Mfg. Co. v. State,* 104 N. Y. 562, 11 N. E. 264, 267, 268.

Some of the foregoing cases, while not in line with our decisions on the subject of permanent appropriations of lands by railroads, yet are authority on the general subject of continuing trespasses. As has been shown before, the mere fact of the filing of the map (even if it be admitted that the appearance of the words "Spring Park" thereon, showed a dedication of the land with any particular boundaries) did not preclude the possibility

of the plaintiffs afterwards acquiring such a possession as would give a right of action. The gravamen of the trespass, in this case, was the pumping of the water from the springs and the filling or partial filling of one or more of them, and each pumping and filling consti- tuted a trespass—particularly after the party in pos- session protested against it.

As to the last clause of the agreed statement, it re- serves to the defendant the benefit only "of presenting. the question as to whether its special plea of justifica- tion is proved by the evidence." Said plea of justification rested alone on the deed, and not on any agreement or authority thereafter. The deed granted "the right to use water out of one of the said springs near the right of way, and to lay a pipe to connect the spring with the water tank, to be covered with earth, so as it would not be in the way on the grantor's land." This certainly did not authorize the drawing of the water from all of the springs and placing obstructions which caused them to be filled up.

The subsequent conversation between the plaintiff's father and defendant could not be a construction of the deed, as the deed was expressed in clear terms and need- ed no construction. If it amounted to anything, it would be a change in the terms of the deed; and even in that light it was only an agreement for temporary use until the spring could be walled up. After a reasonable time had elapsed for the walling up of the spring, the de- fendant, continuing the interference with the possession, would become a trespasser (1 Addison on Torts [Wood's Ed.] p. 387, § 376; *Snedecor v. Pope*, 143 Ala. 275, 287, 39 South. 318); but, if it had been presented by the pleading, the defendant could probably have justified by acquiescence up to the time when plaintiffs objected to the renewing of the box, but not thereafter, though mere

silence would not amount to an acquiescence.—28 Am. & Eng. Ency. Law, p. 54, and cases cited. The possession being permissive, without any claim of right, could not ripen into a title by lapse of time.

From what has been said it is evident that there was no error in the refusal to give the general charge in favor of the defendant, either as to the entire complaint or as to either count. All of the other charges requested by the defendant, except the seventh, present questions in regard to the effect of the dedication of the park, which have been disposed of, and there was no error in refusing to give them.

Referring to charge 7, there was no error in refusing to give it, for the reason that, under all the evidence, it was for the jury to determine whether the particular land in question was dedicated, and as to whether it was dedicated "during the time of the grievances," even if originally dedicated, would depend upon whether it had been vacated, under section 3903 of the Code of 1896, as to which there was no evidence.

The judgment is affirmed.

TYSON, C. J., and ANDERSON and DENSON, JJ., concur.